UNITED STATES DISTRICT COURT          FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ANTHONY INFANTOLINO,

        Plaintiff,                                          MEMORANDUM
                                               AND ORDER
                                               06-CV-520 (JG) (LB)

      -against-

JOINT INDUSTRY BOARD OF THE
ELECTRICAL INDUSTRY and THOMAS
BUSH,

        Defendants.
----------------------------------------------------------x
A P P E A R A N C E S :

        KOEHLER & ISAACS LLP
            61 Broadway
            New York, NY 10006
        By:   Mathew Paulose Jr.
            Attorneys for Plaintiff

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP,
            150 East 42nd St.
            New York, NY 10017
        By:   Ricki E. Roer
            Nancy V. Wright
            Attorneys for Defendants

JOHN GLEESON, United States District Judge:

      Anthony Infantolino sues the Joint Industry Board of the Electrical Industry and

Thomas Bush (collectively "JIB"), alleging unlawful retaliation in violation of the Americans

with Disabilities Act ("ADA"),[1] and its New York State and New York City analogues. The

---

[1]      Plaintiff also pleaded a cause of action under the Employee Retirement Income Security Act
("ERISA"). This claim was the subject of an unsuccessful motion to dismiss. *See Infantolino v. Joint Indus. Bd.*,
2007 WL 879415 (E.D.N.Y. Mar. 15, 2007). In response to JIB's motion for summary judgment, Infantolino has

defendants have moved for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

BACKGROUND[2]

Infantolino, an electrician, belongs to Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO ("Union"). JIB is a joint labor/management organization created by the collective bargaining agreement between the Union, the New York Electrical Contractors Association, Inc., and the Association of Electrical Contractors, Inc. JIB serves two functions salient to this dispute: it administers Union members' health benefits, and it maintains a referral service whereby unemployed Union electricians are referred to participating employers.

Generally, to be eligible for health benefits, an electrician must have been employed for at least 26 consecutive weeks prior to incurring a reimbursable expense. If an electrician has not been continuously employed for that length of time, he is nonetheless eligible for benefits if he was "available for employment" during the relevant period. An electrician is deemed unavailable for employment if he (1) refuses an offered referral within the Union's jurisdiction or (2) restricts his availability for employment to a specific type of job, location, or time.

To participate in the referral program, an electrician informs JIB's Employment Department that he is available for employment. He is then placed on the referral list. As the employers request electricians, JIB refers the electricians on the list on a first-in, first-out basis.

withdrawn this claim. Pl.'s Mem. Opp. Summ. J. at 21 n.1. Accordingly, I grant summary judgment to defendants as to Infantolino's ERISA claim.

[2] The following facts, except where otherwise noted, are undisputed and are drawn from JIB's Statement Pursuant to Local Civil Rule 56.1 ("Def.'s Stmt.").

Once the referral is made, JIB removes the referred electrician from the list. The jobs are usually not permanent positions; they may last a few months or only a few days. When a job is completed, the electrician registers with the Employment Department as "available for work" and is placed at the bottom of the referral list.

In January 2003, Infantolino filed charges with the New York City Commission on Human Rights ("CCHR") and the United States Equal Employment Opportunity Commission ("EEOC") alleging that JIB had unlawfully discriminated against him by refusing to accommodate an alleged disability. On August 21, 2003, Infantolino filed a complaint in this Court based on the same allegation. *See* Complaint, *Infantolino v. Joint Indus. Bd.*, No. 03-cv-4134 (JG) (LB) (E.D.N.Y. Aug. 21, 2003). After settlement conferences and discovery, JIB moved for summary judgment. Infantolino filed a memorandum in opposition on September 16, 2005.

In January 2006, while the summary judgment motion was pending,[3] JIB referred Infantolino for a job in Queens with Sage Electrical Contracting ("Sage"). The job began on January 17, and Infantolino was expected to arrive at 7:00 AM. Sage terminated Infantolino's employment on Thursday, January 19. JIB claims Sage terminated Infantolino "for failing to make the 7:00 a.m. start time three mornings in a row." Def.'s Stmt. ¶ 11. Infantolino claims he was terminated "because the 7am start time was not appropriate for him," because he lived in New Jersey, did not drive, and was unable to reach Queens by 7:00 AM even if he took the first bus to New York City at 5:00 AM. Pl.'s Local Rule 56.1(b) Statement ("Pl.'s Stmt.") ¶ 17.

---

[3] In a report and recommendation dated September 25, 2006, Magistrate Judge Lois Bloom recommended that I grant the motion for summary judgment. I adopted that recommendation on October 26, 2006, and judgment was entered dismissing the case the following day.

On Monday, January 23, 2006, Infantolino reported the termination to JIB, making him once again available for work. JIB did not, however, return him to the referral list. JIB also terminated his health benefits as of January 23. Infantolino learned of this three days later, when his wife's medical provider told her that her coverage had been terminated. He called JIB and was told by two JIB employees, including one who worked in the Employment Department, that he had been deemed unavailable for work because he had "refused the Sage job referral." Pl.'s Stmt. ¶ 12.

On January 27, 2006, a JIB employee called Infantolino and told him he would not be returned to the referral list until he attended a meeting of JIB's "subcommittee." JIB claims that this subcommittee was established in 2004, with the approval of the Union, "because the unionized electrical industry [was] losing a lot of work to non-union contractors due to numerous electricians with bad terminations and/or poor work histories." Def.'s Stmt. ¶ 9. An employee who has been referred to the subcommittee must appear before that body before JIB will return him or her to the referral list. Infantolino claims that his attempts to discover the purpose of the subcommittee meeting were rebuffed, and that he asked whether he could bring an attorney to the meeting and whether he could have the request to attend the meeting in writing. Pl.'s Stmt. ¶ 14. Finally, on April 19, 2006, Infantolino met with the subcommittee. At that time, JIB returned him to the referral list and restored his benefits.

On February 6, 2006, plaintiff filed the complaint in this case. In the instant motion for summary judgment, JIB claims that Infantolino failed to properly exhaust his administrative remedies by filing a complaint with the EEOC; that he failed to serve a copy of his complaint on the CCHR or New York City's Corporation Counsel; that his retaliation claims

fail because JIB was not Infantolino's "employer;" that Infantolino has failed to make out a prima facie case of retaliation; and that, even if a prima facie case has been established, JIB has articulated a legitimate, non-discriminatory reason for its action. JIB also argues that Infantolino has failed to demonstrate that he is entitled to seek punitive damages for his retaliation claims.

DISCUSSION

A.     *The Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists." (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975))). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party.  *Matsushita*, 475 U.S. at 586.  Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case."  *Gallo*, 22 F.3d at 1223-24 (citations omitted).

B.      *JIB's Challenges to Infantolino's Claim*

        1.      *Procedural Defects*

                a.      *Failure to File a Retaliation Charge with the EEOC*

        Title I of the ADA prohibits discrimination against disabled employees, 42 U.S.C. § 12112(a), and Title V prohibits retaliation based on opposition to such discrimination.  *Id.* § 12203(a).  Title I also incorporates the administrative exhaustion provisions found in Title VII of the Civil Rights Act of 1964; a plaintiff alleging discrimination under the ADA, like a Title VII plaintiff, must normally file a charge with the Equal Employment Opportunity Commission ("EEOC") prior to filing suit in federal court.  However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted).

        Infantolino filed a discrimination charge with the EEOC before filing his 2003 discrimination suit, but he did not file a retaliation charge before filing the instant action.  JIB asserts that Infantolino's claim of retaliation should be dismissed because it was not preceded by

a corresponding charge with the EEOC and is not reasonably related to his 2003 discrimination charge. I disagree. The Second Circuit has consistently found that when, as here, an employee claims that he has suffered retaliation because he pursued a discrimination charge, the subsequent retaliation claim is "reasonably related" to the underlying discrimination charge. *Butts v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074 (collecting cases). Accordingly, a plaintiff generally need not file a new charge with the EEOC in order to pursue his retaliation claim in federal court. *Id.* The three-year lapse between the filing of the discrimination charge here and the subsequent retaliation suit does not change this conclusion. The Second Circuit has found a reasonable relation despite longer lapses, *see Legnani*, 274 F.3d at 686 (retaliation suit based on 1998 firing reasonably related to 1993 EEOC charge); *Shah v. N.Y. Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) (retaliation suit based on adverse actions taken in 1991 and 1994 reasonably related to 1990 charge), and JIB fails to adduce facts that would warrant a different result in this case. Accordingly, I will not dismiss Infantolino's retaliation claim due to his failure to file an EEOC retaliation charge.

      b.    *Failure to Serve the New York City Commission on Human Rights and Corporation Counsel*

Title 8 of the New York City Administrative Code also prohibits discrimination against disabled employees and retaliation in opposition thereto. A person aggrieved by a violation of the code's discrimination provisions "shall have a cause of action in any court of competent jurisdiction for damages." N.Y.C. Admin. Code § 8-502(a). The code also provides that, within 10 days of commencing such an action, "the plaintiff shall serve a copy of the complaint" upon the representatives of both the New York City Commission on Human Rights

and the Corporation Counsel of New York City. *Id.* §8-502(c). Infantolino apparently did not serve these parties, and JIB contends that his failure to do so warrants the dismissal of his claim to the extent it relies on New York City human rights law. However, the two departments of the Appellate Division of the New York State Supreme Court that have reached the issue have held that the failure to serve the CCHR and Corporation Counsel does not bar a plaintiff's suit. *Bernstein v. 1995 Assocs.*, 630 N.Y.S.2d 68 (1st Dep't 1995); *Teller v. Am. W. Airlines*, 659 N.Y.S.2d 314 (2d Dep't 1997). The only cases reaching a contrary conclusion are unreported federal decisions that predate *Bernstein* and *Teller* and have been appropriately disregarded as "inaccurate predictors of New York law." *Cully v. Milliman & Robertson, Inc.*, 20 F. Supp. 2d 636, 644 (S.D.N.Y. 1998). I therefore decline to award summary judgment on this ground.

    2.    *Substantive Defects*

        a.    *The Burden-Shifting Framework*

Retaliation claims under the ADA "are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (internal citation omitted). To establish a prima facie case of retaliation, Infantolino must show that (1) he engaged in an activity protected by the ADA; (2) JIB was aware of this activity; (3) he suffered an adverse employment action; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Id.* "A plaintiff's burden at this prima facie stage is *de minimis.*" *Id.*

"Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Id.* at 721. If defendant does so, "the plaintiff must point to evidence that would be

sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.*

      b.     *The Prima Facie Case*

JIB first contends that Infantolino has failed to make out a prima facie case of retaliation because JIB is not his employer. Cases such as *Treglia*, JIB asserts, say that a plaintiff must demonstrate that "his *employer* knew of [his protected] activity," and "his *employer* took adverse employment action." *See id.* at 719 (emphasis added). The implication of this language, JIB argues, is that only an employer can violate the anti-retaliation provisions of the ADA.

This argument cannot be reconciled with the plain language of the relevant statutory provisions. The anti-retaliation provision of the ADA states that "[*n*]*o person* shall discriminate against any individual . . . because such individual made a charge . . . under this chapter." 42 U.S.C. § 12203(a) (emphasis added). Nothing in this language mandates an employer-employee relationship. The ADA prohibits discrimination by "covered entit[ies]," which includes "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). Cases like *Treglia* simply use the term "employer" as a shorthand for the numerous individuals and entities whose conduct the Act regulates; they do not establish a rule that only employers can violate the ADA.

JIB also suggests that it cannot be sued for retaliation because it is not a "covered entity" under 42 U.S.C. § 12111(2). Infantolino argues that this status is irrelevant under the retaliation provision: while Title I says that no "covered entity" shall discriminate, 42 U.S.C. § 12112(a), Title V says that "no *person*" shall retaliate. 42 U.S.C. § 12203(a). I need not decide

which of these interpretations is correct, because I find that JIB *is* a covered entity under § 12111(2). Specifically, it is a joint labor-management committee.

Although neither the ADA nor the case law defines the term "joint labor-management committee," 42 U.S.C. § 12111(2), the phrase clearly covers JIB. JIB's executive arm is its "Joint Employment Committee." Def.'s Stmt. Ex. D, Employment Plan § 2(a) ("The Joint Industry Board *acting through its Joint Employment Committee* shall have jurisdiction in the matter of equitable employment of qualified journeyperson electricians . . . .") (emphasis added). This committee is comprised of JIB's chairman, its employment director (Mr. Bush), and three representatives from both the employers and the union. *Id.* § 1(a). It is charged with "devis[ing] the means for equitable referral rotation of employment among the journeyperson electricians" and resolving appeals related to the operation of the referral system. *Id.* § 2(f), (i). Because JIB's operations are designed and overseen by a committee consisting of representatives from both labor and management, I readily conclude that it is a "joint labor-management committee" and therefore a "covered entity" under 42 U.S.C. § 12111(2). *See Krouse v. Amer. Sterilizer Co.*, 126 F.3d 494, 505 n.6 (3d Cir. 1997) (suggesting that pension plan committee with three union representatives and one employer representative was a joint labor-management committee); *S. Ry. Co. v. Amer. Train Dispatchers Ass'n*, 948 F.2d 887, 889 (4th Cir. 1991) (describing arbitration panel consisting of three representatives from both the union and the employer as a "joint labor-management committee").

JIB also argues, to no avail, that the lack of an employment relationship exempts it from liability for retaliation under city and state laws and regulations. Section 296 of the New York State Executive Law makes it "an unlawful discriminatory practice for *any person engaged*

*in any activity to which this section applies* to retaliate or discriminate against any person . . .

because he . . . has filed a complaint . . . under this article."  N.Y. Exec. Law § 296(7) (emphasis

added).  Similarly, section 8-107 of the New York City Administrative Code makes it "an

unlawful discriminatory practice for *any person engaged in any activity to which this chapter*

*applies* to retaliate or discriminate in any manner against any person because such person has . . .

filed a complaint, testified or assisted in any proceeding under this chapter . . . ."  N.Y.C. Admin.

Code § 8-107(7).  The "activity" covered by these provisions includes not only the conduct of

employers, but also that of, *e.g.*, employment agencies, N.Y. Exec. Law § 296(1)(b), and labor

organizations and their agents, N.Y.C. Admin. Code § 8-107(1)(c).  As with the ADA, a

defendant could violate either of these provisions even if he is not the plaintiff's employer.

Accordingly, the fact that JIB is not Infantolino's employer does not entitle JIB to summary

judgment as to the retaliation claims.

JIB also argues that Infantolino has failed to show a "causal connection . . .

between the alleged adverse action and the protected activity."  *Treglia*, 313 F.3d at 719.  "[T]he

causal connection needed for proof of a retaliation claim can be established indirectly by

showing that the protected activity was closely followed in time by the adverse action."  *Reg'l*

*Econ. Cmty. Action Program, Inc. (RECAP) v. City of Middletown*, 294 F.3d 35, 54 (2d Cir.

2002).  JIB first contends that its allegedly retaliatory actions occurred in 2006, approximately

three years after Infantolino filed his discrimination charge with the EEOC, and thus did not

"closely follow" any protected activity.  However, the parties agree that the relevant date in

determining the existence of a causal connection is the date plaintiff last engaged in protected

activity.  *See* Def.'s Reply Mem. Supp. Summ. J. at 6 ("temporal proximity clock" starts to run

"on the date of the last protected activity"); *see also Treglia*, 313 F.3d at 721.  After Infantolino filed his EEOC charge, he filed and prosecuted a federal lawsuit based on the same alleged discrimination.  He claims that his September 2005 filing of a brief opposing summary judgment on his original discrimination claim constitutes the last protected activity in this case.  JIB contends that the last protected activity was the filing of the complaint in 2003.

JIB's position is untenable.  The notion that the ADA protects the filing, but not the prosecution, of a retaliation lawsuit cannot be reconciled with the statutory text or the case law interpreting it.  The ADA's anti-retaliation provision protects parties who "participat[e] *in any manner in a[] . . . proceeding*" under the ADA.  42 U.S.C. § 12203(a) (emphasis added). The Second Circuit, interpreting an identical provision under Title VII, observed that "the word 'any' has an expansive meaning, and thus, so long as Congress did not add any language limiting the breadth of that word, the term 'any' must be given literal effect."  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174 (2d Cir. 2005) (internal quotation marks omitted).  It therefore held that a woman "participat[ed]" in a discrimination lawsuit simply by being named as a voluntary witness, even though she was never called to testify.  *Id.*  If "participation" covers such conduct, it must also cover a plaintiff's filing of a responsive memorandum in a discrimination suit, which involves deliberate, affirmative action, as opposed to the mere "association" found sufficient in *Jute*.  *See id.*  Furthermore, the "primary purpose of anti-retaliation provisions" like § 12203(a) is to "maintain[] unfettered access to statutory remedial mechanisms."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  I will not frustrate that purpose by interpreting § 12203(a) to protect a plaintiff's efforts to file a suit but not his efforts to win it.

Because I conclude that Infantolino's September 2005 opposition to JIB's motion for summary judgment constituted the last protected activity, the question is whether that filing was "closely followed" by JIB's actions, four months later, terminating Infantolino's benefits and refusing to return him to the referral list. JIB argues that a lapse of more than two months between protected activity and adverse action precludes a finding of a causal connection between the two. No binding authority supports such a rule; indeed, the Second Circuit has expressly held that a period of four months provides "temporal proximity . . . sufficient to support an allegation of a causal connection strong enough to survive a summary judgment motion." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 555 (2d Cir. 2001). JIB points to no reason why the four-month lapse in this case is less probative that the four-month lapse in *Gorman-Bakos*. Accordingly, I conclude that Infantolino has met his minimal burden of demonstrating a prima facie case of retaliation.

  c.  *JIB's Legitimate, Non-retaliatory Reasons*

 JIB posits legitimate reasons for both of its allegedly retaliatory actions. First, it claims that it refused to return Infantolino to the referral list because of his "termination for cause by Sage on January 19, 2006, as well as [his] past termination record." Def.'s Mem. Supp. Summ. J. at 11. It claims that it terminated his benefits because he had not remained "available for work" as the terms of the CBA required. Each of these constitutes a legitimate reason for the corresponding action: if Infantolino was no longer eligible for health benefits, JIB could legitimately refuse to provide them. Similarly, if JIB had a practice of keeping employees with spotty employment histories off the referral list following a bad termination, Infantolino's termination from the Sage job could trigger this policy. *Cf. Lieberman v. Gant*, 630 F.2d 60, 65

(2d Cir. 1980) ("It is enough for the defendants in the second phase of the case to bring forth evidence that they acted on a neutral basis. They do not have the burden of establishing that their basis was sound . . . ."). Accordingly, I turn to whether Infantolino has introduced evidence "that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia*, 313 F.3d at 719 (internal quotation marks omitted).

        d.     *Evidence of Pretext*

As to the termination of benefits, the evidence of pretext clearly suffices. Under the terms of the benefit plan, an employee loses his benefits only if he is "unavailable for work." The parties have identified only two situations in which an employee will be deemed "unavailable for work": when he refuses a referral or restricts his availability for work. JIB employees initially claimed that Infantolino had refused the Sage referral, but it is now uncontested that no such refusal occurred. Absent some indication that Infantolino refused a referral or restricted his availability for work, there is nothing to suggest that Infantolino was, during the relevant period, both unemployed and unavailable for work. Accordingly, a reasonable juror could find that this reason for terminating Infantolino's benefits was pretextual, and that the real reason for the termination was to punish Infantolino for complaining of disability discrimination.

As to the refusal to return Infantolino to the referral list, JIB argues that it was following a policy whereby an employee would be "suspended" from the referral list if he received a "bad" termination (and his prior work history was sufficiently spotty) until he met

with the subcommittee to discuss his lackluster performance. There are two strands of evidence from which a rational juror could conclude that this explanation is a pretext.

First, Infantolino's sworn deposition testimony, which I take as true on a motion for summary judgment, establishes that this was not the explanation JIB gave at the time of the alleged retaliation. When Infantolino first tried to determine why JIB would not return him to the list, two JIB employees told him that it was because he had refused the Sage job. Pl.'s Mem. Opp. Summ. J. Ex. G. at 129-32. Inconsistency in the reasons a defendant gives for an allegedly retaliatory action is evidence of pretext. *See EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994).

Second, the evidence does not unequivocally support JIB's contention that it was merely following protocol in refusing to return Infantolino to the referral list. Most of the evidence regarding the operation of the referral list came from the testimony of co-defendant Thomas Bush, and this testimony was inconsistent in a few key respects. While JIB now maintains that the decision not to return Infantolino to the list was based on the combination of a bad termination and a sufficiently high number of bad terminations in the past, Bush occasionally maintained that *every* bad termination resulted in a refusal to return an employee to the referral list, regardless of employment history. Bush Dep. at 18 ("Q. My question is how is an electrician removed from the referral list. A. With a bad layoff, and then, you know, he's got to be cleared."); *id.* at 38 ("[H]e got removed because he couldn't make the start time . . . ."). He also gave inconsistent testimony as to how many bad terminations constituted a bad employment history. At one point he testified that "more than . . . four or five" bad terminations was enough (suggesting that Infantolino should have been called before the subcommittee following an

earlier termination), *id.* at 25; at other times he testified that it took as many as thirty or forty

(suggesting Infantolino should not have been called in at all), *id.* at 123. Bush's testimony was

also inconsistent as to whether the length of an employee's tenure as a participant in the referral

service affected the number of bad layoffs that would constitute a bad employment history.

*Compare id.* at 69 ("Q. So it doesn't matter how many years the person has worked? A. Right. Q.

It's just the sheer number of bad terminations; correct? A. Yes.") *with id.* at 125 ("Q. . . . Why

would you call someone who had just two bad layoffs in? A. . . . He's in [the Union] less than a

month, and he's got two bad layoffs. Q. So it depends on the person's record? A. Right.").

In sum, JIB's explanation for its refusal to return Infantolino to the referral list is

that it was following a well-established protocol. But the inconsistencies in Bush's testimony

could lead a reasonable juror to infer that the protocol was not well established or that JIB was

not following it. Either inference would support a conclusion that JIB's asserted reason was

actually a pretext. I conclude that Infantolino has established a genuine issue of fact as to

pretext, and that a jury could conclude that the true motivation was to retaliate against him for his

disability discrimination complaint. Accordingly, JIB's motion for summary judgment on this

issue is denied.

C.      *The Availability of Punitive Damages*

JIB asserts that the applicable statutes do not provide for the recovery of punitive

damages, and in the alternative, that Infantolino has failed to establish a genuine issue of fact as

to his entitlement for such damages.

1.      *Applicable Law*

The New York Court of Appeals has held that plaintiffs may not, with a limited exception not relevant here, recover punitive damages in actions brought under New York State Human Rights Law, N.Y. Exec. Law § 297(9).  *Thoreson v. Penthouse Int'l, Ltd.*, 80 N.Y.2d 490, 499 (1992).  However, the First Department of the Appellate Division of the New York Supreme Court has consistently held that plaintiffs can seek punitive damages for violations of the New York City Human Rights Law, N.Y.C. Admin. Code § 8–502.  *See Bracker v. Cohen*, 612 N.Y.S.2d 113 (1st Dep't 1994); *Walsh v. Covenant House*, 664 N.Y.S.2d 282 (1st Dep't 1997); *Nacinovich v. Tullet & Tokyo Forex, Inc.*, 685 N.Y.S.2d 17 (1st Dep't 1999).  Accordingly, Infantolino may seek punitive damages as to his city law retaliation claim, but not his state law claim.

As for Infantolino's federal law retaliation claim, it is an open question in this circuit whether a plaintiff can seek punitive or compensatory damages for a violation of the anti-retaliation provisions of the ADA.  *Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 234 (E.D.N.Y. 2005) (noting that the Second Circuit has, without analyzing the issue, upheld a compensatory damages award under the anti-retaliation provision).  The most persuasive argument that such damages are not recoverable, endorsed by the Seventh Circuit in *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961 (7th Cir. 2004), appears in *Brown v. City of Lee's Summit*, 1999 WL 827768 (W.D. Mo. 1999) (unreported decision):

> Plaintiff's claim for retaliation under the ADA arises under 42 U.S.C. §12203. The Court finds no basis in the statutory language to support the availability of compensatory and punitive damages for plaintiff's retaliation claim. In the employment context, section 12203 incorporates the remedies set forth in section 12117. Section 12117 in turn adopts the remedies set forth in Title VII of the Civil Rights Act of 1964, and, in particular, 42 U.S.C. 2000e-5. Section 2000e-5 does not authorize compensatory or punitive damages. Furthermore, the Civil Rights Act of 1991, which does [at 42 U.S.C. § 1981a(a)(2)] authorize compensatory and

punitive damages for violation of certain enumerated ADA sections, does not list the ADA's retaliation provision, 42 U.S.C. 12203. Thus, a meticulous tracing of the language of this tangle of interrelated statutes reveals no valid basis for plaintiff's claim of compensatory and punitive damages in his ADA retaliation claim.

I agree with this analysis, and therefore conclude that compensatory and punitive damages are not available for claims brought pursuant to the anti-retaliation provisions of the ADA. Nonetheless, I believe this result is puzzling enough to warrant further comment.

Specifically, it appears that the failure to permit recovery of compensatory and punitive damages in retaliation actions was an oversight. The damages provision was enacted as part of the Civil Rights Act of 1991, and was motivated by a belief that the existing remedies "allow[] employers who intentionally discriminate to avoid any meaningful liability." H.R. Rep. No. 102-40 (II), at 27 (1991). Congress intended to distinguish between cases of intentional discrimination, where damages were appropriate, and cases involving disparate impact, where they were not. *Id.* at 29 ("[C]ompensatory and punitive damages may be awarded for intentional discrimination under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq. Section 107 of the ADA incorporates by reference the powers, remedies and procedures of Title VII. Similarly, damages would not be available for disparate impact claims brought under the ADA."). However, the statute and legislative history do not mention retaliation, which is plainly a form of intentional discrimination -- discrimination based on an employee's decision to exercise his statutory rights. *See* 42 U.S.C. § 12203(a) ("No person *shall discriminate* against any individual" for opposing an unlawful practice or participating in a proceeding brought pursuant to the ADA.) (emphasis added). I cannot fathom why Congress would draft a statute that effectively, even if obliquely, forecloses a damages remedy for such cases. *See Sink v. Wal-Mart Stores*, 147 F. Supp. 2d 1085, 1101 (D. Kan. 2001) ("While the court can discern no logic

18

in a rule that precludes an award of compensatory and punitive damages in an ADA retaliation case when such damages are available in Title VII retaliation cases, the court is nonetheless confined to the construction of the statute."). However, while the result produced by the literal text of the statute is anomalous, this is not one of those rare cases where I may "invoke[] the need to avoid an absurd result to override the plain language of a statute." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 368 (2d Cir. 2006). Though I have little doubt that this gap in the remedies available to ADA retaliation plaintiffs is the product of congressional oversight rather than congressional design, I am equally confident that only Congress can properly fill it.

Some district courts have allowed compensatory damages for retaliation claims, arguing that the "remedies and procedures . . . available to aggrieved persons for violations of § 12203 are the *same* as the remedies and procedures available under Title I of the ADA." *Edwards*, 390 F. Supp. 2d at 236 (internal citation and quotation marks omitted). This argument is not persuasive, because the relevant provision of the Civil Rights Act of 1991 authorizes additional remedies for violations of Title I (specifically, punitive and compensatory damages), and does not even mention Title V. *See Arredondo v. S2 Yachts*, 496 F. Supp. 2d 831, 835 (W.D. Mich. 2007) (choosing to follow *Kramer* rather than *Edwards* for this reason). Consequently, I hold that compensatory and punitive damages are not available for retaliation claims pursuant to 42 U.S.C. § 12203; to the extent Infantolino seeks such damages under his federal law retaliation claim, JIB is entitled to summary judgment.

2.      *Evidence that Infantolino Is Entitled to Punitive Damages*

Under New York law, punitive damages are appropriate when a defendant engages in "outrageous conduct which is malicious, wanton, reckless, or in willful disregard for

another's rights." *Prozeralik v. Capital Cities Commc'ns, Inc.,* 82 N.Y.2d 466, 479-80 (1993) (internal quotation marks omitted). Although a plaintiff may recover punitive damages under N.Y.C. Admin. Code § 8–502, JIB claims that Infantolino has failed to raise a triable issue of fact as to whether JIB's conduct warrants an award of punitive damages. JIB's argument overlooks the fact that, "[a]lthough a higher morally culpable state of mind is generally required for an award of punitive damages under federal and city antidiscrimination law than for a finding of liability, much of the evidence used to support a finding of intent is also probative of reckless disregard of a plaintiff's rights." *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 262 (S.D.N.Y. 1999). As discussed above, a reasonable jury could find that, *e.g.*, JIB terminated Infantolino's medical benefits because he had filed a discrimination charge, and not because he was ineligible for benefits. And if a jury could find that JIB withheld benefits to which Infantolino was clearly entitled, it would also be reasonable to find that this act was in willful disregard for another's rights, and therefore award punitive damages. Accordingly, JIB's motion for summary judgment as to the availability of punitive damages under N.Y.C. Admin. Code § 8-502 is denied.

CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted as to (1) Infantolino's ERISA claim; (2) Infantolino's retaliation claim, to the extent that it seeks punitive or compensatory damages under 42 U.S.C. § 12203; (3) Infantolino's retaliation claim, to the extent that it seeks punitive damages under N.Y. Exec. Law § 297(9). In all other respects, the motion is denied. The final pretrial conference will be held on November 7, 2008 at 10:00 AM. Jury selection and trial will take place on November 10, 2008 at 9:30 AM.

20

So ordered.


JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
　　　October 1, 2008